## POLLITT et al. v. LONG.

*Riparian owners — use of stream — holding back water — damnum absque injuria — reasonable use a question for the jury.*

Defendant operated a saw mill which, during a portion of the year, required more than the natural flow of the stream upon which it was situated. In order to run it defendant held back the water in his mill-pond, and operated the mill by using a pondful at a time. By this plaintiff's mill on the same stream below, and which could be run by the natural flow, was deprived of water during a portion of each day. In an action to restrain defendant from holding back the water, *held*, that defendant had a right to a reasonable use of the stream, having a regard to a like use by other proprietors on the stream, and if plaintiff was injured by such reasonable use he was not entitled to damages therefor.

*Held*, also, that whether such use was reasonable was a question of fact for the jury.

EXCEPTIONS ordered to be heard at general term in the first instance. The facts appear sufficiently in the opinion.

*Humphrey & Lockwood*, for plaintiffs.

*Wm. H. Gurney*, for defendant.

MULLIN, P. J. This is a motion by the plaintiffs, William Pollitt and George Andrews, for a new trial on a case ordered to be heard here in the first instance.

The action was brought to recover damages for the unreasonable detention by the defendant, Charles Long, of the waters of a stream that supplied the power by which plaintiffs' factory and defendant's saw-mill were operated. The defendant's mill was about one hundred and twenty rods above the plaintiffs' factory. The defendant's dam was about nine feet high, and the water was collected in a pond containing about two and one-half acres; a flutter-wheel was used in the mill, and there was required to operate defendant's mill about three times the water usually flowing in said stream, except when the volume of water was increased by rain or the melting of snow.

Plaintiffs' factory was operated by an overshot wheel to which the water was conducted in a canal or flume from a dam about ten rods below defendant's mill. The pond created by plaintiffs' dam contained about one-quarter of an acre. If the stream was permitted

to flow uninterrupted to plaintiffs' factory there would be water enough to operate it the entire year.

In time of low water it took from four to five hours to fill defendant's pond, and the quantity that collected would, in consequence, be consumed in two or three hours; when defendant's mill was not running and while defendant's pond was filling plaintiffs' factory could not run, as water could not flow into plaintiffs' flume.

On each day from the 15th to the 25th October, 1866, plaintiffs' mill was stopped and they were prevented from running and using their machinery by stoppage of the flow of the water by defendant while his pond was filling. Each stoppage was from one to six hours, and the aggregate of such stoppages was four days. The wheel used by the defendant required more water to operate it than any other wheel in use.

It was shown on the part of the defendant that the mill was run but a small part of the time between the 15th and 25th October, 1866, and he did not interrupt the flow of the stream longer nor in any different manner than was necessary to accumulate water in his pond to run his mill. For one-third of the year there was water enough in the stream to run the mill all the time, and for another third he could run the mill all day with the natural flow of the stream, and the accumulation in the pond in the night and the rest of the year he could only run his mill by pondfulls.

What other evidence, if any, was given by the parties, we do not know, as it is not stated that the case contains all the evidence, hence, we must assume that sufficient evidence was given to authorize the jury to find in favor of the defendants, if more was necessary.

The judge charged in substance that every man has the right to the reasonable use and enjoyment of a current of moving water as it flows through or along his own land for mill purposes, having due regard to the like reasonable use of the stream by proprietors above and below him.

In determining the question of such reasonable use, a just regard must be had to the form and magnitude of the current, its height and velocity, the state of improvements in the country in regard to mills and machinery and the use of water as a propelling power, the general use of the country in similar cases, and all other circumstances bearing on the question of fitness or propriety in the use of water in the particular case.

In determining the question of reasonable use of water by the

defendant, the law requires that he should adapt himself to the kind of advanced machinery in common and general use in the country. If, under all the circumstances, the defendant's conduct has been reasonable and fair, plaintiffs cannot recover, though their own mill has been stopped and they have sustained damage thereby.

· The charge embodies a part of the opinion of the supreme court of Massachusetts delivered by SHAW, C. J., in the case of *Gould* v. *Boston Duck Co.*, 13 Gray, 442, and is a lucid statement of the law as to the rights and liabilities of owners of mills supplied by water from the same stream, and is as favorable to the plaintiffs as they had the right to ask or expect.

The plaintiffs' counsel asked the court to charge the jury that if they find that defendant's mill, in the manner in which it was used and the wheel used required more than the ordinary and natural flow of water in that stream, and the plaintiffs for that reason were deprived of the natural and usual flow of the water, then his use was reasonable. The court refused so to charge, and plaintiff's counsel excepted.

The proposition stripped of its verbiage is in substance this : that the defendant had no right to detain the water while his pond was filling up, but must limit its use to the natural flow of the stream.

No proposition is better settled than that an owner of a mill on a stream has the right to erect a dam and detain the water for a reasonable time in order to obtain a supply for the use of his mill, and whatever damages result from such detention to owners above or below him on the same stream, must be borne as they are *damnum absque injuria*. Angell on Water-courses, §§ 118, 119. The request was properly refused.

The plaintiffs' counsel excepted to that part of the charge in which the jury were told that it was a question for them, and if the plaintiffs' power was unreasonably light he was not entitled to recover.

The question whether the detention of the water was unreasonable and whether it was discharged by defendant in unreasonable quantities into plaintiffs' pond, are questions of fact for the jury, and not of law for the court. *Hetrick* v. *Deshler*, 6 Barr (Penn.) 32, cited in Angell on Water-courses at close of § 119.

I am at a loss to know what is meant by that part of the charge

in which the jury is told that "*if the plaintiffs' power is unreasonably light, he is not entitled to recover.*"

If the meaning is that the plaintiffs' wheel required so little water to run it, that the water discharged from defendant's mill, when in operation, was not used by the plaintiff nor retained by his pond and was therefore wasted, I do not perceive how that had any thing to do with the question before the jury.

The plaintiffs had tne right to use much or little, and the defendant was under no obligation to regulate his use of the water by the quantity the plaintiffs used.

It had nothing whatever to do with the question whether defendant's use was a reasonable one. Id., §§ 118, 119.

*Motion denied.*